IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Kenneth Dwight Cooper,<br>    Petitioner,<br><br>v.<br><br>Harold Clarke,<br>    Respondent.[1] | )<br>)<br>)<br>)   No. 1:23cv449 (CMH/WEF)<br>)<br>)<br>) |

### MEMORANDUM OPINION

Kenneth Dwight Cooper ("Petitioner" or "Cooper"), a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his October 28, 2005 convictions in the Circuit of the City of Norfolk, Virginia's for first-degree murder and use of a firearm in the commission of a felony. The respondent has filed a Rule 5 Answer and a Motion to Dismiss with supporting briefs and exhibits [Dkt. Nos. 14–16], and Petitioner has responded. [Dkt. No. 23]. For the reasons that follow, respondent's Motion to Dismiss must be granted, and the petition dismissed with prejudice.

### I. Procedural History

On August 23, 2005, after waiving his right to trial by jury, Cooper was convicted by a judge in the Circuit of the City of Norfolk of first-degree murder in violation of Virginia Code § 18.2–32 and use of a firearm in the commission of a felony in violation of Virginia Code § 18.2–53.1. By order dated October 28, 2005, the circuit sentenced Cooper to life in prison for the first-degree murder conviction and imposed a sentence of three years in prison for the firearm

---

[1] Cooper filed a petition for a writ of habeas corpus in this Court on July 25, 2008. The petition was dismissed without prejudice on December 1, 2008. Cooper v. Johnson, Case 1:08cv782 (CMH/JFA) (E.D. Va. Dec. 1, 2008).

conviction. Commonwealth v. Cooper, Case Nos. CR04003363-01 and -02 ("CCT at __"). He was sentenced on October 28, 2005, and the judgment order was entered on November 7, 2005. CCT at 136-38.

Cooper, by counsel, filed a petition for appeal in the Court of Appeals of Virginia in which he raised two assertions of error: 1) the evidence was insufficient to find him guilty of first-degree murder; and 2) the prosecution failed to provide sufficient evidence to corroborate his confession. [Dkt. No. 16-1 at 4] (Cooper v. Commonwealth, Record No. 2712-05-1). On May 5, 2006, a judge of the court found that the evidence was sufficient to sustain his conviction for first-degree murder, and that the second assignment of error was defaulted.[2] [Dkt. No. 16-3]. In finding the evidence sufficient to sustain Cooper's conviction for first-degree murder, the court held that

> the evidence proved that at approximately 11:40 p.m. on May 11, 2004, there was a drive-by shooting in the 600 block of West 28th Street and Antoine Boyd died from a single gunshot wound to the chest. Investigator Butcher responded to the scene and collected several .45-caliber cartridge cases, a bullet, a T-shirt, several 9-millimeter cartridge cases, and two bullets from inside a house. Butcher prepared a diagram that showed the location of the .45-caliber cartridge cases and the 9-millimeter cartridge cases. In the morning, Investigator Wall collected a deformed shell casing in the 500 block of West 28th Street. Wall testified he learned the location of a green Isuzu Rodeo that may have been used in the drive-by shooting. On May 19, 2004, Wall and Investigator Malbon went to the home, a woman answered the door, stated the Rodeo belonged to her mother, and stated appellant was asleep inside the home. Wall arrested appellant.
>
> Wall interviewed appellant and when asked where he was on May 11, 2004, appellant responded "he was nowhere near Park Place [which is also the 600 block of West 28th Street]."[1] Appellant stated the Rodeo belonged to his aunt and he was with his girlfriend on May 11, 2004. Appellant stated Tysean Rodwell picked him up around midnight to 1:00 a.m. on May 12, 2004. Appellant stated Rodwell was driving the Rodeo and Calvin Baxter was in the front passenger seat. Wall interviewed appellant later that day. Appellant stated Rodwell picked him up and

---

[2] The Court of Appeals held that even though the assignment of error asserting the evidence was insufficient to corroborate his confession was defaulted, "[t]he forensic evidence presented by the Commonwealth corroborated appellant's confession. Based upon a review of the record, appellant has failed to prove that an element of the offense did not occur to invoke the ends of justice exception to Rule 5A:18." [Dkt. No. 16-3 at 5].

2

they met several other men at a Motel 6. Appellant stated they were hanging out and talking about a meeting between various Blood gang members scheduled for a few days later at Park Place. Appellant stated he left in the Rodeo with Thomas Holmes, who was driving. Appellant stated Rodwell was seated in the front passenger seat, Baxter was seated behind Holmes, and he was seated behind Rodwell. Appellant stated upon arriving at West 28th Street, Holmes pointed at Boyd and said, "There he go. We're going to do this right." Appellant stated when the shooting started, he ducked down and did not see anything. Appellant stated Baxter had a .45-caliber handgun and Rodwell had a 9-millimeter Lorcin. Malbon told appellant based upon evidence recovered from the scene, his story did not make sense. Appellant then stated he had a 9-millimeter Lorcin and shot it after Baxter shot his handgun. Appellant stated the reason for the shooting was Baxter was supposed to be joining the Bloods and Boyd was getting in the way. Walls testified that on August 12, 2004, appellant gave another statement where he reiterated that Boyd was in the way and had to be taken care of. Appellant admitted he was a member of the Bloods gang. Appellant admitted he shot at Boyd, but stated he thought they were going to buy marijuana when they left the motel. Appellant stated he, Holmes, and Baxter started to shoot simultaneously. Appellant stated Holmes wanted Boyd dead because Boyd cheated Holmes on a cocaine deal and Boyd wanted to start his own gang. Appellant stated they returned to the motel, learned Boyd was dead, and he gave his gun to a person who would get rid of it.

Helen Schumacher, an expert in firearms, testified a damaged bullet collected from the scene was a .38-class bullet, which could fit into a 9-millimeter Luger, but not into a .45-caliber cartridge. Schumacher testified the four 9-millimeter Luger cartridge cases collected from the scene were fired from the same weapon. Schumacher testified the eight .45-caliber cartridge cases collected from the scene were fired from the same weapon.

****

Appellant admitted he was seated behind the driver and discharged a 9-millimeter weapon. The diagram showing the location of the casings was consistent with a person shooting a 9-millimeter weapon out the window where appellant was seated when a vehicle was driving the correct way on West 28th Street. The four 9-millimeter casings found at the scene were fired from the same weapon. Appellant, an admitted gang member, stated Boyd was killed because he was interfering with the recruitment of Baxter into the gang, and Boyd was attempting to start his own gang. Although more than one person fired at Boyd, the men in the vehicle were acting in concert and the offense of first-degree murder is attributable to all of them. *See Pugliese v. Commonwealth*, 16 Va. App. 82, 93, 428 S.E.2d 16, 24 (1993) (finding that in Virginia, a perpetrator and principal in the second degree are equally liable for the crime of first-degree murder.) Appellant's statements and the physical evidence were sufficient to prove beyond a reasonable doubt that he participated in the willful, deliberate, and premeditated killing of Boyd. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of first-degree murder.

3

[Dkt. No. 16-3 at 1-4] (footnote omitted). Cooper sought review by a three-judge panel and on August 22, 2006 the panel adopted the reasoning of the May 5, 2006 order in its decision. [Dkt. No. 16-4].

Cooper, by counsel, filed a petition for appeal in the Supreme Court of Virginia, which raised the same allegations of error as he had raised in the Court of Appeals of Virginia. The court refused his petition for appeal in a summary order dated January 11, 2007. [Dkt. No. 22-1 at 4] (Cooper v. Commonwealth, Record No. 061743).

On November 5, 2007, Cooper filed a petition for a writ of habeas corpus in the Supreme Court of Virginia. Cooper raised several allegations of ineffective assistance of counsel, asserted the convictions were a "manifest injustice," and the prosecutor had used perjured testimony. On May 22, 2008, the court dismissed the petition finding that Cooper's ineffective assistance of counsel claims did not satisfy either the performance or the prejudice prongs of the two-part test established by Strickland v. Washington, 466 U.S. 668, 687 (1984). [Dkt. No. 16-7] (Cooper v. Director, Record No. 072462).[3] The court also found that the two allegations predicated on the actions of the prosecutor were defaulted pursuant to the rule of Slayton v. Parrigan, 205 S.E.2d 680 (Va. 1974).

On March 23, 2023,[4] Cooper executed his current § 2254 federal habeas petition in which he has raised four grounds for relief:

A. "The prosecutor destroyed evidence favorable to the petitioner."
B. "The prosecutor knowingly used perjured testimony—or failed to correct known false testimony—to obtain petitioner's conviction."

---

[3] In dismissing one of the allegations of ineffective assistance of counsel for failure to establish either prong of Strickland, the Supreme Court of Virginia found that "the evidence at trial proved that petitioner participated in the willful, premeditated and deliberate killing of the victim." [Dkt. No. 16-7 at 2-3].

[4] See Houston v. Lack, 487 U.S. 266, 276 (1988).

4

    C. "Petitioner is actually innocent of the crime he was convicted, resulting in a miscarriage of justice which can be corrected on habeas."

    D. "Petitioner's conviction was obtained as a result of the prosecutor's misstatements of fact."

[Dkt. No. 1 at 4, 14].

### III. Statute of Limitations

Respondent moves the Court to dismiss the federal habeas petition as untimely. Under the Anti–terrorism Effective Death Penalty Act (AEDPA), a petition for a writ of habeas corpus must be dismissed if it is filed more than one year after (1) the judgment becomes final; (2) any state–created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)–(D). This period generally begins on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" and excludes "[t]he time during which a properly filed application for State post–conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(1)(A), (d)(2).

Here, the direct appeal concluded on January 11, 2007 when the Supreme Court of Virginia refused his petition for appeal. Because Cooper did not petition the United States Supreme Court for writ of certiorari, his conviction became final for the purposes of § 2244(d)(1) 90 days after the Supreme Court of Virginia refused his appeal, which was Wednesday, April 11, 2007. See Gonzalez v. Thaler, 565 U.S. 134, 149 (2012) (holding that, under § 2244(d)(1)(A), a judgment becomes final "when the time for pursuing direct review in [the Supreme Court], or in state court, expires"). Absent tolling, Cooper had one year from that date, or until Thursday, April 10, 2008, to file his §2254 petition.

5

In calculating the one-year period, a court excludes the time during which a properly filed state collateral proceeding is pending. See 28 U.S.C. § 2244(d)(2); Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts). The federal statute of limitations began to run on April 11, 2007 and was tolled on November 5, 2007 when Cooper filed his state habeas petition. A total of 210 days elapsed before the statute of limitations was tolled on November 5, 2007, which left Cooper 155 days after his state habeas proceeding concluded to file his federal habeas petition. The federal habeas statute of limitations remained tolled until the state petition was dismissed on May 22, 2008, and the remaining 155 days of the statute of limitations lapsed on Friday, October 24, 2008, which is over fourteen years before he filed the current § 2254 petition. Absent equitable tolling, the petition is barred by federal statute of limitations.

To qualify for equitable tolling, a petitioner must demonstrate that (1) he had been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing, Pace, 544 U.S. at 418, or through a showing of actual innocence. See McQuiggin v. Perkins, 569 U.S. 383, 392 (2013). A petitioner asserting equitable tolling "bears a strong burden to show specific facts" that demonstrate fulfillment of both elements of the test. *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008)). The petitioner generally is obliged to specify the steps he took in diligently pursuing his federal claim. Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001). In addition, the petitioner must "demonstrate a causal relationship between the extraordinary circumstance on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000). It is widely recognized

that equitable tolling is to be applied only infrequently. Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (resort to equity is "reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result").

Cooper claims he has new evidence which establishes he is "factually innocent" of the charges against him. Therefore, he argues, his time bar should be excused, and that the time limitation starts from when he discovered the new evidence. Cooper's claim of actual innocence fails, and the evidence he relies upon was tested before trial, admitted at trial, and the examiner testified at trial as well.

"[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" House v. Bell, 547 U.S. 518, 536-37 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Cooper's evidence is not "new." Cooper argues that a letter dated February 13, 2023, by a prosecutor, indicates that "Items 48065, 48079, & 48080," which are listed in an attachment to the letter, were destroyed on the date of his trial, August 23, 2005; he also refers to the items as "unidentified items: 48065 destroyed 8/23/2005; 48079 destroyed 8/23/2005; 48080 destroyed 8/23/2005." [Dkt. No. 23 at 1, 3].[5] Cooper argues that he could not have known about the destruction of the items before the February 13, 2023 letter and that contrary to the respondent's argument "there is no evidence that the destroyed evidence was tested." [Id. at 3]. Cooper argues the date the discovery of the new evidence was the date of the letter, February 13, 2023, and that he has been diligent because he brought his claims within one year of that date. [Id. at 4].

---

[5] The attachment listing the items is a memorandum from the Norfolk Police Department dated October 28, 2022. [Dkt. No. 1-1 at 2]. The letter to which the memorandum is attached is undated, but for purposes of this motion the Court will assume it was dated February 13, 2023.

7

The record refutes Cooper's argument that he could not have discovered his alleged "new evidence" before the federal statute of limitations expired. First, Commonwealth's Exhibit No. 9 at trial listed all of the items the Norfolk Police Department requested the Division of Forensic Science to test. The request was submitted on May 21, 2004, over a year before trial. (CCT at 97-99). Item "48065" referred to by Cooper in his § 2254 petition is associated with fifteen different items of evidence: a T-shirt; a bullet "off of T-shirt;" eight .45 caliber shell casings; three 9mm shell casings; and two bullets. [Id. at 97-98].[6] The request form numbers the fifteen items, Item Nos. 6 through 20. Item Nos. 6 through 20 are also listed on the November 9, 2004, Certificate of Analysis submitted as Commonwealth's Exhibit No. 10 at trial. [Id. at 100-102]. The Certificate of Analysis discusses the results of the examination and testing of the fifteen items.

Item "48079" referred to by Cooper in his § 2254 petition is associated with one item of evidence—a "Deformed 9mm cartridge casing." [Id. at 98]. The deformed 9mm cartridge casing is numbered Item No. 25 on the request form. Item No. 25 is listed on the November 9, 2004, Certificate of Analysis submitted as Commonwealth's Exhibit No. 10 at trial. [Id. at 100-102]. The Certificate of Analysis discusses the results of the examination and testing of the deformed 9mm cartridge casing.

Item "48080" referred to by Cooper in his petition is associated with one item of evidence—a "a piece of metal jacket." [Id. at 98]. The piece of metal jacket is numbered Item No. 26 on the request form. Item No. 26 is listed on the November 9, 2004, Certificate of Analysis submitted as Commonwealth's Exhibit No. 10 at trial. [Id. at 100-102]. The Certificate of Analysis discusses the results of the examination and testing of the piece of metal jacket.

---

[6] The items (48065, 48079, and 48080) are each preceded on the request form by "Det Div#." (CCT at 97-98). The designation "Det Div#," does not appear on the Petitioner's October 28, 2022 memorandum from the Norfolk Police Department [Dkt. No. 1-1 at 2], but the memorandum indicates the numeric identifiers (which include 48065, 48079, and 48080) are associated with ten evidence vouchers. Each of the numeric identifiers are associated with Item Nos. listed on the request and the Certificate of Analysis.

In sum, all of the items of evidence listed as destroyed on the day of trial were examined before trial, the examiner (Schumacher) testified at trial, Commonwealth's Exhibit No. 10, Certificate of Analysis, lists out the numerous items of evidence that were tested (each identified with an Item No.), and the Item Nos. in the Certificate of Analysis correspond to the Item Nos. in Commonwealth's Exhibit No. 9, which associates those same Item Nos. with the numeric identifiers Cooper argues were never tested. The fact that Cooper allegedly only learned in February 2023 that the items tested before trial and listed in the Certificate of Analysis were destroyed is of no moment. The testing was available to Cooper before trial, the examiner was present and testified at trial, and his arguments are refuted by the trial record.

Moreover, the evidence recounted by the Court of Appeals of Virginia does not indicate a miscarriage of justice or a credible assertion of actual innocence. Further, the Supreme Court of Virginia reached a similar conclusion in state habeas. See, supra at note 3. The facts upon which Cooper bases his argument that he could not have learned about the evidence being destroyed after his trial (even if on the same day), are simply wrong.[7] The evidence "destroyed" was not exculpatory and was introduced by the prosecutor at trial, and Cooper could have pursued any claim related to this evidence not only before trial, but after trial as well and before the expiration of the statute of limitations.

Finally, as the respondent notes, Cooper was found guilty based on statements he made to the police, which were consistent with the physical evidence recovered from the crime scene.

---

[7] The state court trial record indicates that the exhibits introduced at trial were not destroyed until after July 14, 2015. (CCT at 205). Those exhibits included: Exhibit 6A, the T-shirt; Exhibit 6B, the bullet from on top of the T-shirt; Exhibits 6C, 6D, 6E, 6G, 6H, 6J, 6K, and 6M (eight .45 caliber cartridge cases); Exhibits 6F, 6I and 6L (three 9mm cartridge cases); Exhibits 6N and 6O (two bullets); Exhibit 7, piece of metal jacket from bullet; Exhibit 8, cartridge case. (CCT at 215). The items introduced into evidence match up with the items of evidence tested and listed on Commonwealth's Exhibit No. 9, and associated with the three numeric identifiers—48065, 48079, and 48080. See, supra at 8. While it is unclear what "Destroyed 8/23/2005" is meant in the Norfolk Police Department's memorandum, the state court record establishes that the items associated with the three numeric identifiers (48065, 48079, and 48080), were introduced as evidence at trial and were maintained by the state court Clerk until sometime after July 14, 2015.

9

The record also establishes that the prosecutor disclosed exculpatory evidence. Indeed, Cooper attached a letter filed by the prosecutor and sent to his trial counsel dated May 17, 2005, that disclosed statements by Lorraine Maxine Gibbs as potentially exculpatory and informing Cooper and his attorney that former investigator David Goldberg, who testified at trial, had been indefinitely suspended for "violations of departmental policies and procedures." [Dkt. No. 1-2 at 1]. The petition is dismissed as untimely.

## IV. Conclusion

For the foregoing reasons, respondent's Motions to Dismiss [Dkt. Nos. 14, 15] will be granted, and the petition will be dismissed by an order to be issued with this opinion.[8]

Entered this 29th day of Feb., 2024.

_____
United States District Judge

Alexandria, Virginia

---

[8] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.